*In re* STUART'S ESTATE.

SLINGERLAND *v.* CEDERLUND.

1. WILLS—CONSTRUCTION—EXTRANEOUS FACTS.

In controversy over paragraph of a will, construction must be had from four corners of the will with no extraneous facts presented except to state first named party therein was the only blood relative of testatrix mentioned in the will and the purpose of religious charity also mentioned in the controverted paragraph.

2. TRUSTS—PRECATORY TRUSTS—INTENT—WILLS.

Essence of the doctrine of precatory trusts is that words creating them, while in form the expression of a request, wish, or recommendation on the part of testator, are, in fact, intended by him as a positive direction or command obligatory on person to whom they are addressed.

3. WILLS—PRECATORY WORDS—INTENT.

A wish directed to a beneficiary is generally regarded as precatory unless clearly the words express the testator's intention to the contrary.

4. SAME—CONSTRUCTION—SURROUNDING CIRCUMSTANCES—AMBIGUITIES.

In construing a will a court must ascertain the intent of the testator from the whole will and such surrounding circumstances as bear upon ambiguities.

5. SAME—PRECATORY TRUST—EVIDENCE.

That bequest to a certain individual and if she is deceased to two others or survivor with ''earnest request'' that sum ''be paid to'' a named religious charity omits further discretionary words, that bequest and request are coupled together in same paragraph and cover a single amount, that subject and beneficiary of claimed trust are certain, that legatee is not required to do anything as a condition of payment to the charity, that words ''to be paid to'' have imperative ring and that elsewhere bequest is made to first-named legatee unconditionally *held*, evidence of intent to establish a precatory trust.

6. SAME—PRECATORY TRUST—UNCONDITIONAL BEQUEST.

In will drafted by a scrivener who knew how to provide a direct bequest, for survivorship, for priority in legacies and to estab-

lish a trust, the bequest of a certain sum to a named person and
if she were deceased to two other persons with "earnest re-
quest" that sum be paid to named religious charity *held*, to
make an unconditional bequest to first-named legatee and not a
precatory trust for the charity.

Appeal from Kent; Brown (William B.), J. Sub-
mitted October 15, 1935. (Docket No. 80, Calendar
No. 38,598.) Decided January 6, 1936.

The will of Alice E. Stuart was presented for
probate. From order of probate court ordering
payment of bequest to John and Albert Cederlund
in trust for American Board of Missions to the
Jews, Incorporated, John Slingerland, adminis-
trator of the estate of Fannie Slingerland, appealed
to circuit court. Judgment affirmed. John Slinger-
land appeals. Reversed and remanded.

*Dunham & Sherk,* for appellant.

*Norris, McPherson, Harrington & Waer,* for ap-
pellees.

Fead, J. The question is whether the court erred
in holding that the following paragraph of the will
of Alice E. Stuart created a "precatory trust" in
favor of American Board of Missions to the Jews
or made an absolute gift to Fannie Slingerland.

"Paragraph 3. I give and bequeath to said
Fannie Slingerland, if living, the sum of $3,000, and
if she is deceased, I give and bequeath the same to
John Cederlund and Albert Cederlund, and to the
survivor of them, with the earnest request that the
recipients of this fund use the same for religious
work among the Jewish people, the same to be paid
to the American Board of Missions to the Jews,
Incorporated, of 27 Thropp avenue, Brooklyn, New
York."

Construction of the will must be had from its four corners, with no extraneous facts presented except that Fannie Slingerland was a first cousin of testatrix, was her only blood relative mentioned in the will, and the purpose of the American Board of Missions to the Jews is to spread the Christian gospel to the Jews.

The rest of the will becomes important. Paragraph 1 directs the payment of debts and funeral expenses. Paragraph 2 reads:

"Paragraph 2. I give and bequeath to Fannie Slingerland of Spring Lake, Michigan, my household goods, furniture and furnishings, including my books, pictures, linens, my watch, jewels and jewelry, bric-a-brac, wearing apparel and kindred articles, and if she does not survive me, I give and bequeath the same to Mrs. August Cederlund and John Cederlund, of Grand Rapids, Michigan, and the survivor of them, with the earnest request that Fannie Slingerland, if living, or if she is deceased, then Mrs. August Cederlund and John Cederlund distribute my bric-a-brac among my friends, as they or the survivor of them shall deem advisable."

Paragraph 4 gave and bequeathed $1,000 to Mary Cederlund, if surviving, and $1,000 to her son, John, with the mother to take John's gift if he were deceased.

In paragraph 5, testatrix made 12 gifts in order, beginning with $3,000 to Fannie Slingerland, $1,000 to Mrs. August Cederlund, $1,000 to John Cederlund, $1,000 to Aloys (Ladd) Slingerland, $500 to City Rescue Mission, of Grand Rapids, $100 each to First Presbyterian Church Missionary Societies of Grand Rapids and Spring Lake, and $100 each to other persons, all dependent upon surviving testatrix. The paragraph provides:

"Memo. I direct that these bequests be paid in full in the order that they appear in the above list, beginning with the first thereof, to the extent that my estate will permit."

Paragraph 6 begins:

"Any and all residue and remainder of my estate, after the instructions in the preceding paragraphs are complied with, I give, devise and bequeath to the Grand Rapids Trust Company, a corporation, of Grand Rapids, Michigan, in trust, however, for the following uses and purposes:"

It confers on the trustee the usual powers and duties of management, sale, investment and reinvestment, according to its judgment and with full authority. It provides that the income be paid to the City Rescue Mission unless and until it cease to exist or, in the trustee's judgment, shall discontinue active religious and charitable work in Grand Rapids, whereupon the income shall be paid as the Grand Rapids Foundation from time to time shall direct. Paragraph 7 names the Grand Rapids Trust Company as executor, with full power of sale and conveyance.

"The essence of the doctrine of precatory trusts is that the words creating them, while in form the expression of a request, wish, or recommendation on the part of the testator, are, in fact, intended by him as a positive direction or command obligatory on the person to whom they are addressed." *Trustees of Hillsdale College* v. *Wood*, 145 Mich. 257, 263.

"A wish directed to a beneficiary is generally regarded as precatory, unless clearly the words express the testator's intention to the contrary." 69 C. J. p. 79.

Counsel have cited a large number of cases, including several from this State, but none is in point on the facts and, therefore, they are of interest only as illustrative of the reasoning of the courts. In 49 A. L. R. 10 and 70 A. L. R. 326, the authorities have been collected and particular provisions or incidents in wills which have had influence or persuasive force in holding precatory words imperative are set up. None of them, however, rises to the dignity of a general rule of construction but each was given force with relation to the balance of the will. All the cases recognize that such provisions and incidents are merely aids to construction and that, ultimately, the province of the court is to ascertain the intent of the testator from the whole will and such surrounding circumstances as bear upon ambiguities. It is also pointed out that, contrary to the early English view, American courts are reluctant to give precatory expressions the force of commands. 49 A. L. R. 20.

Defendants' contention that paragraph 3 established a trust finds support in the facts that while it uses the discretionary words "earnest request," found in paragraph 2, it omits the further discretionary words therein "as they or the survivor of them shall deem advisable;" that the bequest and request are coupled together in the same paragraph and cover a single amount; that the subject and beneficiary of the claimed trust are certain; that the legatee is not required to do anything as a condition of payment to the board; that the words "to be paid to" have an imperative ring; and that elsewhere in the will other bequest is made to Fannie Slingerland unconditionally. These incidents are recognized by the courts as of force in finding a trust from precatory words.

On the other hand, the use of the word "request" imports a plea rather than a command; the repetition in paragraph 3 of the term "earnest request," used in a discretionary connection in paragraph 2, carries an implication of similar discretion in paragraph 3; the fact that the legatee is requested to "use" the fund for religious work implies personal discretion in its disposition and is inconsistent with a mandate that it be paid to the American Board of Missions to the Jews; and testatrix made outright gifts to another legatee, John Cederlund, in different paragraphs of the will.

When the will is read as a whole, it demonstrates beyond doubt that testatrix, or the scrivener who put her wishes into writing, knew how to provide a direct bequest, for survivorship, for priority in legacies, and to establish a trust. These things were done by appropriate words. Paragraph 3 operates on a single specific sum of money, imposes no trust duty on a legatee and, if it creates a trust, the legatee is merely a conduit for passage of the money and the paragraph amounts to a direct bequest to the American Board of Missions to the Jews. If the will had been prepared by a person uninformed in legal terms or it demonstrated a careless use of language, defendants' claim would have much force. But the nicety and precision of bequests which characterize the will appear to us to be conclusive that the use of the term "earnest request" in its ordinary sense was intentional in the third as well as the second paragraph, to convey the idea of a plea and not a command.

We, therefore, hold that the will did not establish a precatory trust but that paragraph 3 made an unconditional bequest to Fannie Slingerland.

Reversed, with costs, and remanded to the circuit court for entry of proper order in accordance with this opinion.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL and POTTER, JJ., concurred. EDWARD M. SHARPE, J., did not sit.

The late Justice NELSON SHARPE took no part in this decision.